## JACKSON v. GEWIN.

1. It is not sufficient to prevent a reversal, when the proof shown by the opposite party warrants the inference that no action can be maintained; it is only when the case made by the party himself is not sufficient to enable him to recover or defend; or when he has had the benefit of his claim or defence under another phase of his case, that this Court will not reverse, although error has intervened.

2. After the institution of a claim to slaves levied on, a transfer by the claimant of his title to a third person, is valid, and passes his right of property, clogged however by all the consequences of the levy and claim; and the title is not turned into a mere right of action.

Writ of Error to the Circuit Court of Lawrence.

DETINUE, by Jackson against Gewin, to recover certain slaves named in the declaration.

At the trial, on the general issue, the plaintiff made title to the slaves in controversy, under a deed executed to him, in trust, for the purpose of paying certain debts therein described, by one B. M. Hodges, on the 13th September, 1841, and proved the said slaves were in the possession of Hodges at the time of executing the deed; also that he was the owner of them since 1837, and that the same were in the posses-

sion of the defendant immediately previous to, and at the
commencement of this suit, on the 28th May, 1842. The
defendant, for the purpose of shewing the slaves in contro-
versy were in the adverse possession of another, at the time
when the deed was executed, proved that the slaves, on the
13th July, 1841, were levied on by one Gibson, acting as de-
puty for the defendant, as sheriff of Lawrence county, by
virtue of a writ of *fi. fa.*, issued on the 10th of the same
month, against John Hodges and other named persons as de-
fendants, at the suit of the Branch Bank at Decatur, plaintiff.
The slaves, at the time of the levy, were in the possession of
B. M. Hodges, but were levied on as the property of John
Hodges.    On the day of the levy they were claimed by B.
M. Hodges as his property, and were returned by Gibson to
his possession, and no bond for the claim suit was executed
until the 14th September, 1841, the day after the execution of
the deed under which the plaintiff made title.    The claim
suit was dismissed at the March term, 1844, in consequence,
as the record of the judgment entry in evidence recites, of the
claimant Hodges having gone into bankruptcy ; and his as-
signee having failed to apply to be made a party to the suit,
that was dismissed, and a *venditioni exponas* directed to issue
to the sheriff of Lawrence county, commanding him to expose
to sale the slaves specified in the levy, on which the claim
was instituted.    A *venditioni exponas* against the parties to
the first *fi. fa.* was issued, and by virtue of it the slaves in
controversy were sold on the 1st April, 1844, by one Gallo-
way, then being sheriff.

On this state of proof, the Court, among other matters,
charged the jury, if they should find that on the 13th of July,
1841, Gibson as the deputy for the sheriff of Lawrence coun-
ty, levied on and took possession of the slaves in controver-
sy, by virtue of a *fi. fa.* against John Hodges and other nam-
ed persons; or against any person, and took possession of
them under such levy, and afterwards surrendered the slaves
to B. M. Hodges upon his affidavit and claim as aforesaid,
then the interest of said B. M. Hodges in the slaves, was on-
ly a *chose in action*, such as could not be transferred by the
deed, although B. M. Hodges had the slaves in his posses-
sion, at the time of executing the said deed.

The plaintiff requested the Court to charge the jury, that if they believed B. M. Hodges was the real owner of the slaves when so levied on, and was not a party against whose property the *fi. fa.* was issued, and that John Hodges and the other defendants named in that *fi. fa.* had no property in said slaves, when levied on by Gibson, the latter had no right or authority under that writ to make the levy, and the levy vested no title in the sheriff, nor did it divest the right and interest of B. M. Hodges in the said slaves. This and some fifteen or more charges, involving the same principle, with various shades of modification, were refused by the Court, and the plaintiff excepted, as well to the charge actually given, as to the refusals to charge, as requested.

This charge. and the refusals to charge, are now assigned as error.

L. P. WALKER and J. B. SALE, for the plaintiff in error, made the following points :

1. The levy by the sheriff divested no rights whatever, nor invested that officer with any title so as to turn that of the true owner into a *chose in action.* It was a mere tortious act, which, until a sale actually made by him operated nothing against Hodges. [Brown v. Lipscomb, 9 Porter, 572 ; Dunklin v. Wilkins, 5 Ala. Rep. 199.] If the property remained in the sheriff's possession, it would notwithstanding, belong to the true owner, and therefore the return of it under a supposed bailment, previous to the execution of the claim bond, cannot affect the right.

2. The execution of the bond to secure the party against the claim made after the execution of the deed, is not a matter to change the title to a chose in action, because the only effect of the levy is to charge the property, if it really is subject to the execution. By the levy, a lien only is created, and it is possible this lien passes with the property. It cannot be doubted that a defendant in execution may sell his property, even after a levy is made, and there is no reason why a stranger to the execution shall have less right. [Cobb v. Cage, 7 Ala. Rep. 619.]

WM. COOPER, contra, argued—

1. Pending the trial of a right of property, the thing is in possession of the law, and adverse to him who claims it against the act of the officer of the law.   If this is so, the transfer of title pending the suit, was invalid.   Detinue in many cases is an action of tort, and in this clearly so.   [Pearce v. Alter, 4 Ala. Rep. 669 ; Campbell v. Spence, 4 Ala. Rep. 543 ; 6 Ala. Rep. 46 ;  10 Peters, 400 ; Frier v. Dennis, 2 Ala. Rep. 144 ; Williams v. Jones, Ib. 314.]

2. The institution of a claim suit is a discharge of the sheriff from all liability on account of the levy, and the verdict and judgment is conclusive against the claimant, and those claiming under him.   [Towns v. Butler, 2 Ala. Rep. 378 ; Hardy v. Gascoigne, 6 Porter, 447.]

3. The consequence of this is, that the defendant cannot be liable to the plaintiff, as the conversion or taking was before the latter obtained it, and a chose in action, or property held adversely, cannot be transferred.   [Dunklin v. Wilkins, 5 Ala. Rep. 199 ; Foster v. Goree, Ib. 424; Dexter v. Nelson, 6 Ib. 68 ;  10 Peters, 404 ; Pryor v. Butler, January term, 1846 ; Goodwin v. Lloyd, 8 Porter, 237 ; Brown v. Lipscomb, 9 Ib. 472 ; Stedman v. Reddish, 4 Hawke's 29 ; Stogdale v. Fergate, 2 Marsh. 136 ; Jackson v. Jay, 9 John. 104 ; 3 Sumner, 206.]

4. But if the case was put to the jury on an erroneous charge, the judgment ought not to be reversed, because it is clear, from the parties own showing, that no recovery can be had. The claim interposed released the sheriff, and the property has been sold under a venditioni exponas issued on that claim. [Rakes v. Pope, 7 Ala. Rep. 166.]

GOLDTHWAITE, J.—1. We shall first examine the position assumed by the defendant, in which he insists the judgment ought not to be reversed, notwithstanding there may be error in the charge, upon which the cause went to the jury, inasmuch as the proof discloses the slaves have been sold under a *venditioni exponas*, issued in the claim suit. This circumstance is certainly one of great importance, in the investigation of the respective claims of these parties, but we think it improper now to entertain the question, because no point respecting it, seems to have been made in the court

below, and it may be, the effect of this proof may have been weakened or destroyed by other facts connected with it.    It is true, there is a class of cases in which this court has refused to reverse, although an abstract error was made to appear, but on examination, they will be found to be, where the case as made by the party himself, was not sufficient to enable him to recover or defend, or where, notwithstanding the error, the party has had the benefit of his claim, or defence, under another phase of his case.    [Rakes v. Pope, 7 Ala. R. 166 ; McKenzie v. Jackson, 4 Ib. 230 ; Shehan v. Hampton, 8 Ala. Rep. 942.]

2. We think the charge on which the cause was submitted to the jury is erroneous.    In consequence of our statutes authorizing the institution of a claim, instead of a suit against the sheriff, the sale under the levy is postponed until after that claim is determined, and the property is usually returned to the claimant upon his executing bond with surety for the delivery of the property, in the event the claim is determined against him.    The lien of the levy continues all the time, but the right of property is not in any wise affected.    The precise principle was decided by us in the recent case of Atwood v. Pierson, January term, 1846, where the property of a stranger was levied on, and his vendee after the levy was permitted to interpose the claim.    We do not perceive the force of the objections urged by the defendant's counsel, as it is clear, the right of property sold or conveyed after a levy, and previous to a sale, by the officer, must always pass, clogged with the consequences growing out of the levy, in precisely the same manner as it does when a mere lien exists. It is proper in this case, complicated as it is by the subsequent transactions, to again repeat, that we decline to determine now, what is the effect upon the respective rights of these parties, if the sale of the slaves in controversy was made under the *venditioni exponas*, issued in the claim suit.

Let the judgment be reversed and the cause remanded.